**UNITED STATE BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

In Re:

Mohamed. A. El Rafaei                                      Case 20-12583-KHK
                                                          Chapter 11
          Debtor

_____

Hanan Khalil,                                             A.P. 21-1002-KHK

          Plaintiff                                       Consolidated with

v.                                                        A.P. 21-1009-KHK

Mohamed. A. El Rafaei, et al.

          Defendants

_____


**<u>MEMORANDUM OPINION</u>**


This matter is before the Court under (i) the Complaint to Determine Dischargeability of Debt Owed to Hanan Khalil under Sections 523(a)(2)(a) and 523(a)(6) of the Bankruptcy Code; and (ii) the Second Amended Complaint filed by Hanan Khalil seeking damages for negligence, negligent misrepresentation, breach of contract, fraud, violation of D.C. Municipal Regulation § 16-800.1, violation of the District of Columbia's Consumer Protection Procedures Act § 28-3904, breach of implied warranty of good faith and fair dealing, unjust enrichment and quantum meruit, and piercing the corporate veil. The Court held an evidentiary hearing on October 20, 21 and 22 of 2021. At the conclusion of the evidentiary hearing, the Court took the matter under advisement and ordered the parties to submit post-trial proposed findings of fact and conclusions of law. Having reviewed the record in this case and having heard the evidence and arguments of counsel,

and for the reasons that follow, the Court will enter judgment for the Plaintiff on Counts Two, Four, Five, and Six, for a total award of $172,800, including reasonable attorneys fees which shall be determined at a later date, all of which shall be excepted from the debtor's discharge as the judgment is a debt arising from the Debtor's fraud against the Plaintiff under Section 523(a)(2)(A) of the Bankruptcy Code.

## Procedural Background

Prior to this bankruptcy proceeding, a dispute arose between the Plaintiff, Hanan Khalil (" Khalil"), and Mohamed A. El Rafaei, the Debtor ("El Rafaei) and Design 2 Build, LLC ("D2B" and together with El Rafaei, the "Defendants") related to the renovation of a property in Washington, D.C. that Khalil purchased for use as personal residence and rental property.  On or about September 28, 2020, Khalil filed a complaint against D2B and the Debtor individually in the D.C. Superior Court under Case 2020 CA 004149 B (the "D.C. Action"), seeking the return of the $131,686.00 she had paid the Defendants, plus various other unspecified amounts, including actual damages, treble damages, punitive damages and attorney fees.

On November 23, 2020, the Debtor filed a petition in this Court for relief under Chapter 11 of the U.S. Bankruptcy Code. Thereafter, the Debtor removed the D.C. Action to federal court, which case was eventually transferred to this Court as Adversary Proceeding 21-01009-KHK (the "DC AP").   Khalil filed Proof of Claim 3 seeking to recover a total of $2,014,752.42 against the Debtor, including a claim for disgorgement of $131,686.00, treble damages of $1,207,422.87, punitive damages of $100,000.00, and attorney fees of $575,643.55.  On or about January 8, 2021, the Plaintiff commenced Adversary Proceeding 21-01002-KHK (the "Section 523 AP") by filing a Complaint under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).  Subsequently, El Rafaei and Khalil filed a joint motion to consolidate the Debtor's Objection to Claim 3, the DC AP, and

2

the Section 523 AP, which the Court granted.  Case 20-12583, Docket No. 97; Case 21-1002, Docket No. 11. Under that Order, these matters were all consolidated under the Section 523 AP (collectively, the "Consolidated AP").  Thereafter, the parties filed a Consent Motion to Authorize Filing of Second Amended Complaint.  Docket No. 15.  The Court granted the Consent Motion, and the Second Amended Complaint was filed on June 1, 2021. Docket No. 23.

### Findings of Fact

The Plaintiff, Hanan Khalil, is a resident of Houston, Texas, and works as a physician's assistant anesthetist.  Trial Transcript Oct. 22, 2021, Docket No. 62, p. 4.[1]  Khalil has no training, education, or prior experience in construction.  *Id.*

The Debtor, and one of the Defendants in this case, Mohamed A. El Rafaei, is a resident of Vienna, Virginia and is the sole owner of D2B, the other Defendant, which is a Virginia company that he uses to engage in the business of interior design and construction management for residential and commercial projects in the D.C. area. Day 1 Tr., pp. 33, 139.

Khalil and El Rafaei met one another at a social gathering in 2017.   El Rafaei is the cousin of a good friend of Khalil.    Thereafter, Khalil and El Rafaei discussed Khalil's desire to move to the D.C. area and purchase and renovate a home.  Day 3 Tr., pp. 5-6.  During that conversation, El Rafaei told Khalil that he "renovated properties and had design education." *Id.*   Khalil ultimately purchased real property located at 1349 Queen Street in the District of Columbia (the "Property"). *Id*. The property is a row house with two above grade levels and a basement.  Day 1 Tr., p. 39.

---

[1]The Transcript for the hearing held on October 20, 2021 appearing at Docket No. 61 will be referred to as "Day 1 Tr."
The Transcript for the hearing held on October 21, 2021 appearing at Docket No. 63 will be referred to as "Day 2 Tr."
The Transcript for the hearing held on October 22, 2021 appearing at Docket No. 62 will be referred to as "Day 3 Tr."

When Khalil purchased the property, it was occupied by a tenant who was paying $2,200 a month in rent.  Day 3 Tr., p. 6:22-25; Day 3 Tr., p. 11:11-12; Day 2 Tr., p. 96:22-25.

In the Spring of 2019 when Khalil entered the contract to buy the property, she contacted El Rafaei and told him that she wanted to renovate the home to include a legally rentable basement and to renovate the top two floors with an extension in the back.  Day 3 Tr., p. 6; Day 1 Tr., pp. 39-41.  Khalil intended to occupy the two upper levels as her personal residence and to rent the basement level as a separate dwelling.  *Id*.  Khalil testified that she sought to hire El Rafaei because she thought he would be trustworthy based on her good friend's recommendation.  Day 3 Tr., pp. 16-17.

Prior to making any agreements with Khalil, El Rafaei told her that he was a licensed contractor in the District of Columbia, and that he had obtained his bachelor's degree in interior architecture from the University of Alexandria in Egypt.  Day 3 Tr., p. 7; Day 1 Tr., p. 151.  El Rafaei also told Khalil that his subcontractors were also all licensed in D.C.   Day 3 Tr., p. 7.  Khalil explained at trial that she specifically asked El Rafaei about licensure because she wanted to ensure the existence of competency, insurance, and bonding.  Day 3 Tr., pp. 7, 12:6-11, 84-85 and 108-109.

In preparation for undertaking the renovation for Khalil but prior to entering into any agreements with her, El Rafaei spoke with James Killette about obtaining permits for the project.  Day 2 Tr., p. 65.  Killette works in design and permit procurement but is not otherwise licensed in architecture, engineering, home improvement contracting, plumbing, gas fitting, HVAC, or electrical work.  *Id*. at 58, 65.  Killette told El Rafaei that he could not guarantee a timeline, could not expedite permits and that he does not actually work for the agency that approves permits.  *Id*. at 61-63.  El Rafaei then told Khalil that no one would be able to get a permit faster than D2B's

4

design and permit procurement subcontractor James Killette, that he could get her permits within one month, that he could expedite the permits, and that it usually takes three to six months to get permits approved.  Day 1 Tr., p. 36:11-22; Day 3 Tr., p. 12:6-11.   El Rafaei also told Khalil that he would install high-end fixtures.  *Id*.  Ultimately, the complete set of necessary permits were not obtained until March of 2020, one month after the date the project was supposed to be completed. Day 1 Tr., p. 59.

Prior to negotiating an agreement for the actual construction work on the property, El Rafaei made an agreement with Khalil to provide design and permit procurement services for a fee. Day 1 Tr., p. 42.  The Debtor sent Khalil a one-page unsigned document for design and permit procurement services dated July 8, 2019, in the amount of $11,686.41.  *Id*. at 41; Exhibit ("Ex.") 7 (the "Design Agreement"); Day 3 Tr., p. 12; Day 1 Tr., pp. 41-42.   Khalil paid the fee with a check dated July 12, 2019, made payable to El Rafaei and D2B and the check was subsequently cashed. *Id*. at 41; Day 3 Tr., p. 13; Ex. 8.

On or about September 9, 2019, the Plaintiff agreed with Defendants to renovate the property in accordance with the contract attached to the original Complaint as Ex. B[2]. The contract called for the complete gutting and rehabilitation of the property. It stated, "The project time frame is 5 months. The completion delivery date is February 10th. A penalty of $2,500 per month applies for each month after the completion delivery date." The contract called for a total price of $200,000.00, with a 30% down payment, 30% paid upon completion of the framing, plumbing & electrical rough in, 30% upon completion of the flooring and tile installation, and 10% upon completion of the project. Ex. 12.

---

[2] For ease of reference, this opinion will refer to Exhibit 12 as the contract, but this is not to be construed as a finding of a valid enforceable agreement between the parties.

On October 2, 2019, Khalil made a $60,000 down payment on the project via personal check made payable to "Mohamed Elrafaei." Ex. 15. Defendants began working on the property but did not complete the renovation by February 10, 2020. Throughout the project and until its termination there were various delays relating to the permitting and drawing approval process as well as the contemplated completion timeline. Day 3 Tr., pp. 24:13-25:7, 35:9-19; Day 2 Tr., pp. 14:20-18:16. Disputes arose regarding whether the basement was to be a "legally rentable basement" and whether high-end fixtures were to be installed, among other things. Day 3 Tr., pp. 6:8, 16:17-18, 79:5-80:23, 81-83, 91, 98-99; Day 2 Tr., pp. 13:17-14:19, 205:15-206:16; 107:15-108:5, 172:2-12.

On March 23, 2020, El Rafaei contacted Khalil requesting a second draw payment of $60,000 as provided for in Ex. 12. Day 1 Tr., p. 63; Day 3 Tr., pp. 27-28. El Rafaei knew the Plaintiff was relying on him to give her accurate information about the status of the project. Day 1 Tr., p. 66. When El Rafaei, asked Khalil for the second payment he knew that the framing, plumbing and electrical rough-in had not been completed. Day 1 Tr., pp. 63, 67; Day 3 Tr., pp. 27-28. Khalil responded by denying El Rafaei's request and explaining that "we have not reached a marker for the second disbursement." Day 1 Tr., pp. 68-69; Day 3 Tr., p. 28. The marker for the second payment was "upon framing, plumbing and electrical rough-in." Ex. 12. El Rafaei responded via text stating "we are way past the time for a second payment." Day 1 Tr., p. 69; Day 3 Tr., p. 28; Ex. 27. El Rafaei even sent Khalil a photograph of the construction contract's payment structure and wrote "Done" in red and drew a red arrow to the line in the payment schedule stating that the second 30% payment was due "upon framing, plumbing and electrical rough-in" completion. Day 1 Tr., pp. 69-70; Day 3 Tr., pp. 28-29; Ex. 27. Seminara, one of the

construction expert witnesses in this case, testified that the rough-in was in fact not complete.[3] Ultimately, after further discussions with El Rafaei in which he represented that he was over budget and in need of funds, Khalil made the second $60,000 payment to the Defendants via personal check dated April 7, 2020, made payable to D2B LLC and El Rafaei, and the check was cashed. *Id*. at 76-77; Day 3 Tr., pp. 30, 34; Ex. 28.

Following this payment, a one-month delay in the project ensued due to a failed plumbing groundwork inspection.  Day 2 Tr., pp. 15-16.  In the Spring of 2020, two stop work orders were issued on the project that resulted in further delays.  Day 1 Tr., p. 77. The first stop work order resulted in a two-month delay and occurred because a neighboring property was damaged during excavation for the rear addition footings.  Day 2 Tr., p. 16. The second stop work order resulted in a two-week delay and occurred because water was seeping into the neighbor's house in connection with the excavation. *Id*. at 18.  In July 2020, it was revealed that an improper survey caused an additional delay of approximately one month.  Day 1 Tr., pp. 77-78; Day 2 Tr., pp. 75-78, 93.  Due to the various delays and damage to her neighbor's property that Khalil asserts were El Rafaei's fault, Khalil terminated the relationship with the Defendants on July 17, 2020.  Day 1 Tr., p. 78; Day 3 Tr., p. 35.

Thereafter Khalil hired a replacement contractor to finish the project and repair what she asserts were defects caused by El Rafaei's sub-standard work.  This dispute would ultimately become the basis of the DC AP and the Section 523 AP before this Court.

## Conclusions of Law

---

[3] As will be discussed below, while the Court has stricken Seminara's testimony with respect to the standard of care for purposes of negligence, the Court finds that Seminara's testimony as to whether the rough-in was complete for purposes of understanding the dispute between the parties is appropriately preserved as it will not affect the outcome of this case, particularly given the Court's ruling on the breach of contract issue.

This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[4] The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. With respect to the Section 523 AP, this is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), and (O), in which final orders or judgments may be entered by a bankruptcy judge.  With respect to the DC AP, this is a non-core proceeding for which the parties are deemed to have consented to final adjudication by the bankruptcy court.  *See* Docket No. 4 (parties not consenting to final adjudication by the Bankruptcy Court must file a motion or withdraw the reference by a date certain); *see also* Day 1 Tr., pp. 180-184 (confirming Khalil's consent; indicating that the record reflects deemed consent and that El Rafaei's counsel is pleased with such consent).  Venue is appropriate in this Court under 28 U.S.C. § 1409(a).

**Count One: Negligence**

Viability of the Plaintiff's negligence cause of action depends entirely on this Court's ruling with respect to El Rafaei's objection to Seminara's testimony regarding the standard of care for home improvement contractors.  While El Rafaei raised other objections to the report, the Court finds that resolution of the standard of care objection is dispositive because if testimony regarding the standard of care is stricken, Khalil cannot maintain a cause of action for negligence.  El Rafaei objects because he contends that the standard of care was not disclosed in Seminara's expert report. In response, Khalil in a post-trial brief has argued that "Seminara's report generally notified the parties that he would be testifying about construction defects which necessarily are breaches of the standard of care…"  Docket No. 66, pp. 29-30.   Khalil also points to an affidavit signed by

---

[4] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Seminara that was attached to a Motion for Summary Judgment (Docket No. 38) "where Seminara explicitly opined that Defendants "violated applicable industry standards, rules, regulations and codes," and then listed each violation and cited the applicable standard, rule, regulation, or code. Khalil notes that El Rafaei did not object to that affidavit, presumably in furtherance of the proposition that the standard of care was disclosed for purposes of Khalil's Rule 26 obligations. The Court disagrees.  The Rule requires that the report contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."  See Fed. R. Civ. P. 26(a)(2)(B)(i).   Khalil refers to *Hill v. Coggins*, 867 F.3d 499, 507 (4th Cir. 2017) for the proposition that nondisclosure in this instance is harmless and should therefore not result in Seminara's testimony being stricken.  Docket No. 66, p. 33.  As the Fourth Circuit observed in *Hill*,

> "[trial] courts are accorded 'broad discretion' in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless." (Internal citations omitted). In making this determination, a [trial] court should be guided by the five Southern States factors:
>
> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Hill v. Coggins*, 867 F.3d 499, 507 (4th Cir. 2017) (citing *Southern. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)).

In *Hill*, the 4th Circuit found that the relevant nondisclosure was harmless because (1) the counterparty already had prior notice of the relevant opinion due to it being disclosed in a prior declaration attached to a summary judgment motion,  (2) the counterparty was given an opportunity to designate additional expert witnesses to mitigate an unfair surprise; (3) the opinion could not fairly be labeled as a trial disruption as it did not substantially change the character of

the case and render obsolete much of the parties trial preparation, (4) the opinion, while important for establishing a prerequisite to the cause of action, was also independently established by other independent evidence, and (5) the Court assumed that there was no adequate explanation for the nondisclosure.  Those facts stand in contrast to the facts in this case.  While factor one is nearly identical in our case, the Court finds that the other four factors weigh in favor of exclusion.  Here, El Rafaei was not given an additional opportunity to designate expert witnesses or testimony or do anything to mitigate against the unfair surprise like the party was in *Hill*.  On the third factor, the Court finds that failure to disclose an opinion regarding the standard of care and then seeking to testify regarding such opinion is disruptive to a trial on negligence.  The defendant who prepares for a negligence trial thinking that the expert has not disclosed testimony for the standard of care (and is therefore missing evidentiary support for an essential element of its cause of action) prepares very differently than one who knows they must confront such testimony.  On the fourth factor, it is clear the evidence is important because it is an essential element of the negligence cause of action, making its nondisclosure in the expert report even more unfair, particularly where it is not established by other independent evidence.  On the fifth factor, Khalil has offered no explanation for the nondisclosure other than by arguing that the opinion was necessarily implicated by the subject of his other opinions.

On balance the Court finds that factors 2, 3, 4 and 5 weigh in favor of striking Seminara's testimony with respect to the standard of care.  As a result, Khalil's negligence claim fails because she has failed to produce admissible evidence on the appropriate standard of care and any breach thereof.  The Court will therefore dismiss Count One.

**Counts Two: Negligent Misrepresentation**

"To prove negligent misrepresentation, a plaintiff must show (1) that the defendant made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that the plaintiff reasonably relied upon the false statement or omission to his detriment." *Kumar v. DC WASA*, 25 A.3d 9, 15 n.9 (2011) (quotations and brackets omitted).

Of the fifteen alleged misrepresentations enumerated under Count Two of the Second Amended Complaint, the Court finds that only the misrepresentation alleging "That they had some type of specialized ability to obtain permits on an expedited basis when they did not;" has merit. The record is clear that El Rafaei knew from his conversations with Killette that he could not acquire the permits on an expedited basis; nevertheless, he told Khalil he could obtain them within a month, a statement which Khalil relied on. The Court finds that Khalil's reliance on El Rafaei's statements was justifiable and reasonable because she thought she could trust him as he was the cousin of her good friend. El Rafaei knew Khalil had no experience with construction and that she lived far away from the construction site and would be dependent upon him for guidance. Moreover, El Rafaei knew that Khalil would be relocating her tenant based on his representation that he could acquire permits expeditiously and would therefore be foregoing rent payments from the tenant. Ultimately, it took eight months to acquire all the necessary permits. Accordingly, the Court finds that El Rafaei's ability to obtain permits on an expedited basis and on the described timeline was material. Khalil, in justifiable reliance on that representation, and on the advice of El Rafaei, forced her tenant to vacate earlier than was necessary causing her to needlessly forego rental payments for eight months. The total foregone rent for the eight months is $17,600. While the Court believes that Khalil incurred $15,600 in expenses to relocate her tenant, the Court cannot attribute this cost to El Rafaei or D2B because based on the record before the Court, this would have happened regardless, just not necessarily as soon as it did.

El Rafaei argues that Khalil's negligent misrepresentation claim fails because it refers to future events (i.e., promises) as opposed to representations of present fact.  While there are exceptions to the rule that may have been applicable in the instant case, the Court declines to reach them because the Court finds that the representation regarding the permits relates to what was then a present fact (or more appropriately described, a present misrepresentation of fact) — El Rafaei's and/or D2B's ability to expedite permits, obtain them faster than anyone, and to have them in one month.

While El Rafaei may claim that Khalil has not met her burden of proof, the Court disagrees. Khalil's testimony has been credible, convincing, and consistent and her demeanor has been forthright and open throughout these proceedings.  By contrast, El Rafaei has been evasive, claiming to not remember dates when he remembered them in prior depositions, claiming to not have made statements to Khalil but previously acknowledging those statements in a deposition; and generally being impeached or contradicted throughout the trial.  See the following references: regarding El Rafaei as general contractor obtaining permits: Day 1 Tr., p. 34:2-9, 37:17-20 versus Day 2 Tr., p. 65:5-18; regarding licensing of subcontractors: Day 1 Tr., pp. 36:25-37:2 versus pp. 38:4-39:12; regarding a "legally rentable basement":  Day 1 Tr., pp. 40:25-41:4 versus Day 2 Tr., pp. 13:17-14-19; regarding final conceptual drawings: Day 1 Tr., pp. 42:16-44:21, 46:19-23, 47:2-20 versus Docket No. 63, pp. 65:23-67:3; regarding Killette's license: Day 1 Tr., p. 49:7-9 versus Day 2 Tr., p. 58:3-17; regarding Fuentes' acquisition of permits: Day 1 Tr., pp. 51:20-52:7 versus Day 2 Tr., p. 65:5-18; regarding rough-in completion: 73:24-76:21; regarding project completion: 70:23-72:10.   El Rafaei testified that he could not really remember the date when the last permits were finally obtained, but he did not meaningfully contradict  Khalil's consistent testimony.   Day 1 Tr., p. 62.

The Court finds that El Rafaei's misrepresentations regarding his ability to acquire permits expeditiously, Khalil's reasonable reliance thereon, and her damages in the form of foregone rent in the amount of $17,600, were proven by clear and convincing evidence, which entitles her to relief in the form of an award for these actual damages.  As explained further below, under D.C. Code § 28-3905(k)(2), the Court will treble these damages for a full award of $52,800.

Further, the Court will enter judgment on this Count against the Defendants jointly and severally.  First, El Rafaei has already taken the position that he was acting on behalf of his wholly owned company D2B.  Second, D.C. Municipal Regulation § 16-809.1 provides as follows:

> For purposes of this chapter, the act or omission of any salesperson of a contractor while acting or purportedly acting on behalf of the contractor, which act or omission is in violation of this chapter or is cause for denial, suspension, or revocation of the license of a contractor, **may** be considered the act of the contractor by whom that salesperson is employed, or for whom he or she purported to act, if the contractor approves the act, or, after actual notice of the act or omission, retains the benefit, proceeds, profit, or advantage accruing from the act or omission or otherwise ratifies it.

El Rafaei is the sole owner of D2B (i.e. he controls it) and on the facts of this case, particularly given the fraud involved, the Court finds that D.C. Municipal Regulation § 16-809.1 provides an appropriate vehicle by which to also impute El Rafaei's acts to D2B for purposes of liability in this case.  There is no question that D2B approved the acts of El Rafaei where El Rafaei is in control of D2B.

**Count Three: Breach of contract**

To maintain a cause of action for breach of contract under District of Columbia law, "'a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach.'" *Logan v. LaSalle*

*Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

A valid and enforceable contract exists where there is "both (1) agreement as to all material terms, and (2) intention of the parties to be bound." *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C.2005) (quoting *Georgetown Entm't Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C.1985)) (alteration in original). Although mutual agreement "is most clearly evidenced by the terms of a signed written agreement ... such a signed writing is not essential to the formation of the contract. The parties' acts at the time of the making of the contract are also indicative of a meeting of the minds." *Kramer Assocs., Inc.*, 888 A.2d at 252 (quoting *Davis v. Winfield*, 664 A.2d 836, 838 (D.C.1995)) (internal quotation marks omitted). "In the absence of a valid agreement, a breach of contract claim cannot be sustained." *Cambridge Holdings Grp., Inc. v. Fed. Ins. Co*., 357 F.Supp.2d 89, 94 (D.D.C.2004) (citation omitted), appeal dismissed, 489 F.3d 1356 (D.C.Cir.2007).

"A contract must be sufficiently definite as to its materials terms (which include, e.g., subject matter, price, payment terms, quantity, quality, and duration) that the promises and performance to be rendered by each party are reasonably certain." *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 360 (D.C. 1990).  In this case, El Rafaei has argued that Ex. 12, or "the contract" as the parties refer to it throughout their pleadings, is not specific enough to support enforcement or an award of damages.   El Rafaei also argues that the Plaintiff's case relies on extrinsic evidence outside of the written contract, and that such evidence is barred by the parol evidence rule.   Both arguments are premised on the notion that the entire contract (to the extent one was formed) is contained within Exhibit 12.

Exhibit 12 generally contains a scope of work for the renovation of the property, is labeled as a contract and includes a completion date for the project and a price.  It includes a payment structure indicating what amounts would be due at certain stages of completion of the project.  It also includes a penalty provision of $2500 per month for each month after the completion delivery date for which the project has not been completed.  The Exhibit also refers to and thereby incorporates outside documents and necessary terms, such as an "approved floor plan", a "new basement floor plan," and a new kitchen layout.

Under D.C. law, "[t]he parol evidence rule provides that when parties to a contract have executed a (1) completely integrated written agreement with (2) terms that are plain and unambiguous, no evidence of prior or contemporaneous agreements or negotiations may be admitted which would either contradict or add to the writing." *Regan v. Spicer HB*, LLC, 134 F. Supp. 3d 21, 32 (D.D.C. 2015). "This rule applies with even greater force if the contract contains a clause—usually referred to as a 'merger clause' or an 'integration clause'—indicating that the contract represents a complete and final expression of the parties' wishes." *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 113 (D.D.C. 2013) (citing *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 928 n.17 (D.C. 1992)).

Exhibit 12 does not contain an integration or merger clause, or any language indicating that the parties' entire agreement is contained within the document that is Exhibit 12.  On the contrary, Exhibit 12 itself refers to outside information.

The following testimony from El Rafaei establishes that Exhibit 12 cannot be considered an integrated agreement:

El Rafaei: This was the initial scope of work that we initially discussed when Khalil visited the -- like, during our early meetings, but it was -- it did not include the final

15

scope of work that wasn't even finalized until today. So, it's not --it's just the initial scope of work, like, stuff that we'll need to get done, but it's missing so many decisions that were not decided.

Q. So is it your testimony here today that this is not the contract with Khalil for the construction portion of the project in the District of Columbia?

El Rafaei: I would say it's the initial understanding of the scope of work.

Seminara's testimony regarding Exhibit 12 is also inciteful. He testified the document did not provide the specifications necessary to determine the cost of completion of a contract. Day 2 Tr., pp. 114-120. In short, there is no signed document and no evidence before the Court that Exhibit 12 contains the parties "complete and final expression" of their wishes. Accordingly, the Court finds that Exhibit 12 is not a complete and final expression of the parties wishes, and therefore, the Court rejects El Rafaei's parol evidence and specificity arguments. The parol evidence argument fails for an additional reason, a reason that is also fatal to the breach of contract claim— the parol evidence rule also presupposes a valid contract.

Here, there is no dispute that the purported agreement for the actual renovation of the property qualifies as a home improvement contract (regardless of whether the agreement was limited to Exhibit 12) and is subject to D.C. Municipal Regulation § 16-800.1, which provides that

> No person shall require or accept any payment for a home improvement contract to be undertaken in the District in advance of the full completion of all work required to be performed under the contract, unless that person is licensed as a home improvement contractor or as a licensed salesperson employed by a licensed contractor in accordance with the provisions of this chapter.

This provision has been interpreted by the D.C. Court of Appeals to render subject home improvement contracts null and void, unenforceable on a contract or even quasi contract basis, and to require the disgorgement of all amounts paid in violation of the regulation. *See C.A. Harrison Companies LLC v. Evans*, 266 A.3d 979, 983 (D.C. 2022).

Accordingly, Khalil's breach of contract claim must fail because any agreement she reached with El Rafaei or D2B is null and void, and unenforceable on a contract or quasi-contract theory.  As a result, the Court will dismiss this count.

**Count Four:  Fraud**

To establish a claim for fraud, a plaintiff must establish that the defendant "(1) made a false representation; (2) in reference to a material fact; (3) with knowledge of its falsity; (4) with intent to deceive; and (5) Plaintiff reasonably took action in detrimental reliance upon the representation." *Nwoke v. Woodmont Place 3, LLC*, Case 14-CV-434, 2020 D.C. Super. LEXIS 15, *16 (citing *Sibley v. St. Albans School*, 134 A.3d 789, 808 (D.C. 2016)). Fraud "must be established by clear and convincing evidence." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977).

The Court finds that El Rafaei's representation that he could acquire permits on an expedited basis also establishes fraud, because the representation was made with the knowledge that it was false when uttered and made with the intention to induce Khalil into proceeding with the renovation, which she then did, based on her reasonable reliance. She suffered damages by forcing her tenant to vacate the premises before it was necessary to do so, thereby foregoing rental payments she would have received until the requisite permits were acquired.

Although the Defendants argue that statements about the future are not actionable for fraud, the same exception applicable to negligent misrepresentations discussed above applies to fraudulent statements. "When a person positively states that something is to be done or is to occur, when he knows the contrary to be true, the statement will support an action in fraud. *Bennett v. Kiggins*, 377 A.2d 57, 61 (1977).  In this case, El Rafaei

misrepresented to Khalil that he could obtain permits expeditiously and that he would finish

the project within five months by February 20, 2020.  He knew this was not true because

Killette had informed him that the permits could not be expedited.  Further, El Rafaei

admitted it would take three to six months to obtain permits and three to four months to

complete construction.  Therefore, El Rafaei's statements are actionable, and for the same

reasons articulated above with respect to El Rafaei's negligent misrepresentations, the

Court finds that Khalil has proven fraud by clear and convincing evidence and is therefore

entitled to damages.  For the same reasons expressed in Count 2, the Court will enter

judgment on this Count against the Defendants, jointly and severally.

As will be explained further below, the Court also finds that Khalil has met her

burden of proof under section 523(a)(2)(A) of the Bankruptcy Code, as the standard is

virtually identical to the fraud standard applied above.

**Count Five: Violation of D.C. Municipal Regulation § 16-800.1**

As previously noted, there is no dispute that the purported agreement for the actual

renovation of the property qualifies as a home improvement contract and is subject to D.C.

Municipal Regulation § 16-800.1, which provides that

> No person shall require or accept any payment for a home improvement
> contract to be undertaken in the District in advance of the full completion of all
> work required to be performed under the contract, unless that person is licensed as
> a home improvement contractor or as a licensed salesperson employed by a licensed
> contractor in accordance with the provisions of this chapter.

This provision has been interpreted to require the disgorgement of all amounts paid

in violation of the regulation.  See *C.A. Harrison Companies LLC v. Evans*, 266 A.3d 979,

983 (D.C. 2022).  Khalil asserts that El Rafaei must disgorge the amounts paid to him in

connection with the home improvement contract.  El Rafaei asserts that D2B is the liable

party.  El Rafaei asserts that he is not personally liable because he was merely acting on behalf of D2B.

The regulation, by its plain terms, applies to a "person" who accepts advanced payments prior to the completion of all work.  The exception is persons who are licensed home improvement contractors, or persons who are licensed salespersons employed by a licensed contractor.

El Rafaei, rather than confronting the plain language of the regulation, argues that no District of Columbia or federal court applying D.C. law has imposed liability on a salesperson and argues that the regulations instead impose "upstream liability" as a remedy for the actions of salespersons.  *See* Docket No. 69, p. 13.  The Court disagrees with the artificial constraints El Rafaei attempts to apply to the regulation.

The Court finds the case of *Hume v. Watson*, 680 F. Supp. 2d 48, 49 (D.D.C. 2010) to be instructive on the reach of the disgorgement remedy.  There, the defendant was being sued by a homeowner for disgorgement of amounts paid to him in connection with a home improvement contract.  However, the defendant, Watson, was not a party to the contract. Watson, "on behalf of defendant Kraftwerks, Inc., …contracted with Hume to install a copper roof on her house and he accepted payment for that work before the work was completed, even though Kraftwerks was not licensed to do business in the District of Columbia and Watson was not licensed to do home improvement work in the District of Columbia."  *Hume v. Watson*, 680 F. Supp. 2d 48, 49 (D.D.C. 2010).  There, the court rejected the argument that a person who is not a party to a contract and merely working on behalf of (or as an agent of) another was somehow beyond the regulation's reach and

disgorgement remedy.  In reaching that result, the court in *Hume* focused on the plain language of the regulation.  This Court will do the same.

First, the Court finds that El Rafaei is undoubtedly a person within the meaning of the regulation, as he is an individual.  The Court notes that the definition of person also includes a principal and an agent.  In connection with the home improvement contract Khalil paid El Rafaei $120,000 with two personal checks.[5]  Day 1 Tr., at 81.  Both checks named El Rafaei personally as a payee either jointly or solely.  See Exs. 8, 15, 28.  Second, upon review of D.C. Municipal Regulation § 16-809.1[6], the Court disagrees that the section precludes application of the disgorgement remedy to El Rafaei— that section merely provides that the acts of a salesperson *may* be imputed to the contractor under certain circumstances.  If anything, this provision would seem to indicate that the default is that a salesperson is liable for their own actions.[7]  Like the defendant in *Hume*, El Rafaei has offered nothing more than speculation to rebut the evidence of his liability under the regulation.  Accordingly, the Court finds that El Rafaei's acceptance of $120,000 in payments from Khalil when he was not a licensed home improvement contractor, violated

---

222[5] While Khalil also paid El Rafaei $11,686, that payment was made in connection with the Design Agreement, which does not appear to fall within the definition of a home improvement contract because its scope of work does not include any items that are considered home improvement work under D.C. Municipal Regulation § 16-899.  Home improvement work means "the addition to or alteration, conversion, improvement, modernization, remodeling, repair, or replacement of a residential property, or a structure adjacent to the residential property, including a driveway, fence, garage, porch, deck, or swimming pool." D.C. Municipal Regulation § 16-899.  This agreement was also made prior to the construction contract and is therefore outside of the reach of D.C. Municipal Regulation § 16-899's "subsequent agreements" exception.   Accordingly, that amount is excluded from the disgorgement award.

[6] D.C. Municipal Regulation § 16-809.1 provides as follows: For purposes of this chapter, the act or omission of any salesperson of a contractor while acting or purportedly acting on behalf of the contractor, which act or omission is in violation of this chapter or is cause for denial, suspension, or revocation of the license of a contractor, ***may*** be considered the act of the contractor by whom that salesperson is employed, or for whom he or she purported to act, if the contractor approves the act, or, after actual notice of the act or omission, retains the benefit, proceeds, profit, or advantage accruing from the act or omission or otherwise ratifies it. (Emphasis added)

[7] Here however, El Rafaei is the sole owner of D2B (i.e., he controls it) and on the facts of this case, particularly given the fraud involved, as previously noted above, the Court will also impute El Rafaei's conduct to D2B pursuant to D.C. Municipal Regulation § 16-809.1.

§16-800.1 and therefore, the Court will order that El Rafaei disgorge the $120,000 that he

received from Khalil.  Because El Rafaei and D2B have already conceded that the LLC is

liable under this regulation, the Court will enter the disgorgement award against both

Defendants, jointly and severally.

**Count Six: Violation of the District of Columbia's Consumer Protection Procedures Act (§ 28-3904): Treble damages, Attorney fees and Punitive Damages**

D.C. Code § 28-3904 provides:

It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to:
…

(e) misrepresent as to a material fact which has a tendency to mislead.

…

(dd) violate any provision of title 16 of the District of Columbia Municipal Regulations . . ..

The Court has already ruled that El Rafaei violated D.C. Municipal Regulation § 16-809

and that he made fraudulent misrepresentations of material fact when he did so (and

reiterates those findings below with respect to the 523 AP).  Accordingly, the Court finds

that El Rafaei also violated DC Code § 28-3904.  Of the possible remedies available under

the statute, Khalil has requested treble damages, reasonable attorney fees and punitive

damages.  D.C. Code § 28-3905(k)(2).

Treble damages in lack of home improvement license cases in the District are

measured by the Plaintiff's actual damages, and not the disgorged amount.  *Djourabchi v.

Self*, 571 F. Supp. 2d 41, 53-54 (D.D.C. 2008).  "'[O]nce it is established that a consumer

[has] suffered any damage, the CPPA authorizes [the] court to treble damages without

further findings.'" *District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 729

(D.C.2003) (quoting *Williams v. First Gov't Mortgage & Investors Corp.*, 343 U.S.App.
D.C. 222, 229, 225 F.3d 738, 745 (2000)).

Here, the Court finds that treble damages are appropriate given the fraudulent and
dishonest behavior that El Rafaei has demonstrated.  The Court has not made any findings
with respect to the actual quality of work done in this case (largely due to the Court's
rulings striking  Seminara's testimony regarding his expert report and the standard of care
necessary to prove Count One and the dismissal of Court Three in this case), but it suffices
to say that the record paints a dim picture of what was discussed between the parties and
what was actually delivered (or even intended to be delivered).  Accordingly, as previously
stated, the Court will treble the $17,600 actual damage award for a total actual damage
award of $52,800.  For the same reasons already expressed, the award will be against both
Defendants, jointly and severally.

With respect to attorney fees, again, the Court finds that the fraudulent behavior
coupled with violation of the District's Consumer Protection Procedure Act laws as well
as the District's home improvement contractor regulations necessitates an award of
reasonable attorney fees in this case to mitigate against the losses caused by El Rafaei's
conduct.  While the Debtor argues that no evidence of fees was presented at trial, the Court
finds this argument to be irrelevant.  Federal Rule of Civil Procedure 54, subsection
(d)(2)(A) and (B)(i) expressly contemplate post-judgment motions for attorney fees.
Further, as Khalil points out, D.C. courts have considered post-judgment attorney fees
motions in other DCCPPA cases. *Williams v. Central Money Co.*, 1998 U.S. Dist. LEXIS
22970 (D.D.C. Jan. 29, 1998); *In re InPhonic, Inc.*, 674 F. Supp. 2d 273 (D.D.C. 2009);
see also *Djourabchi v. Self*, 571 F. Supp. 2d 41, 52 (D.D.C. 2008) (court noting that it is

22

not necessary for a party seeking attorney fees to submit an accounting to court before fees are awarded; court granting request for attorney fees in an amount yet to be determined). Accordingly, the Court will award attorney fees in an amount yet to be determined. The award will likewise be against both Defendants, jointly and severally.

With respect to Khalil's request for punitive damages, the Court finds that punitive damages are not appropriate in this case. "[T]he standards the courts would use in determining punitive damages under D.C. Code § 28–3905(k)(1)(c) are the number of actual damages awarded, the frequency, persistency, and degree of intention of the merchant's unlawful trade practice, and the number of consumers adversely affected." *Rowan Heating–Air Conditioning–Sheet Metal, Inc. v. Williams*, 580 A.2d 583 (D.C.Ct.App.1990) (per curiam) (quoting COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMM. ON PUBLIC SERVICES & CONSUMER AFFAIRS, B. 1–187, at 23 (1975)). Here, the record does not indicate that D2B or El Rafaei has encountered other litigation in relation to the business of home improvement contracts. Further, the Court has already ordered the disgorgement of the $120,000 already paid to El Rafaei, as well as an award of actual damages in the amount of $17,600 in connection with the negligent misrepresentation and fraud claims, which damages are trebled under the D.C. Consumer Protection Procedures Act, for a total negligent misrepresentation and DC CPPA award of $52,800. The Court will also be ordering an award of attorney fees in this matter. Given that one of the goals of punitive damages is to deter future conduct, in light of the Debtor's history and this Court's forementioned awards to the Plaintiff against El Rafaei personally, the Court is satisfied that no further sanction is necessary for purposes of deterrence or punishment.

**Count Seven:  Breach of Implied Warranty of Good Faith and Fair Dealing**

Since the implied warranty of good faith and fair dealing depends on a contract action, and the Court has dismissed the breach of contract count, the Court will also dismiss Count Seven.

**Count Eight: Unjust Enrichment and Quantum Meruit**

"The District of Columbia recognizes causes of action for unjust enrichment and quantum meruit as implied contract claims where there is no express contract between the parties, but contractual obligations are implied, either in fact (quantum meruit) or in law (unjust enrichment)." *Plesha v. Ferguson*, 725 F. Supp.2d 106, 111 (D.C. 2010) (citing *United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246- 47 (D.C. Cir. 1996)).  However, as previously noted, the D.C. Court of Appeals has held that D.C. Municipal Regulation § 16-800.1 nullifies home improvement contracts made in violation of the regulation.  Such contracts are unenforceable on a contract or even quasi contract basis, and the regulation requires the disgorgement of all amounts paid in violation of the regulation.  See *C.A. Harrison Companies LLC v. Evans*, 266 A.3d 979, 983 (D.C. 2022).

Here, the Court has already ruled that El Rafaei and D2B must disgorge the $120,000 paid by Khalil for the home improvement contract, obviating the need for an unjust enrichment award.  Therefore, the Court will not enforce this contract, even on a quasi-contractual or quantum meruit basis.  Accordingly, the Court will dismiss this count.

**Count Nine: Piercing the Corporate Veil**

Because the Court has already imposed personal liability on El Rafaei as described above, the Court declines to apply veil piercing in this instance and will therefore dismiss this count.

**The Section 523 Complaint**

At the outset, the Court will address El Rafaei's newly raised argument that "[w]hen Khalil filed her Second Amended Complaint in the consolidated case, the amended pleading superseded her prior pleadings. Because it did not include a complaint against discharge, Khalil amended away claims of non-dischargeability".  First, the Court ordered the parties to submit proposed findings of fact and conclusions of law with respect to the trial that was held.  As a result, the Court finds it inappropriate for El Rafaei to attempt to raise a brand-new argument that he did not mention once during the trial or in his answer to the Second Amended Complaint.  El Rafaei cites *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) in support of his argument.  In *Young*, the 4th Circuit reiterated that the general rule with respect to waiver and amended pleadings "is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect. *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001).  In other words, an amended pleading supersedes the pleading it modifies.  *Id*.  Upon review of the Second Amended Complaint, it clearly corresponds only to the DC Action and does not purport to modify the Section 523 Complaint.  This Court's Order consolidating the DC AP and the 523 AP only ordered that the matters be consolidated under the Case No 21-01002 and mentioned nothing of consolidating the pleadings.  Given that the "Second Amended Complaint" did not refer to the 523 Complaint at all, the Court cannot find that it modified or amended that pleading.  Because the 523 Complaint has not been dismissed or superseded, the Court finds that the 523 Complaint is properly before it. Accordingly, the Court rejects El Rafaei's post-trial waiver argument.

As noted above, Khalil also seeks a non-dischargeability finding with respect to the debt owed to her by El Rafaei.  As previously explained, the Court will be awarding Khalil $120,000, representing the amounts paid in violation of the D.C. home improvement regulations, and

$52,800, representing Khalil's actual damages of $17,600, as trebled by the D.C. Consumer Protection Procedures Act. The total of those awards is $172,800. The Court will also be awarding attorney fees under the D.C. Consumer Protection Procedures Act, in an amount to be determined later upon proper motion and notice. Khalil asserts the entire amounts should be excepted from El Rafaei's discharge as they were either obtained by fraud or misrepresentation under section 523(a)(2) of the Bankruptcy Code, or alternatively, that the debt was obtained by willful and malicious injury under section 523(a)(6). As explained below, the Court finds that these items more appropriately fit within the contours of the fraud exception to discharge, and therefore, the Court need not reach the willful and malicious argument.

To establish that a claim is non-dischargeable under section 523(a)(2)(A), "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) ... justifiable reliance on the misrepresentation." *In re Romano*, 18-35464-KRH, 2019 WL 5204455, at *4 (Bankr. E.D. Va. Oct. 15, 2019) (citing *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999)). The Plaintiff must prove non-dischargeability under section 523 by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); see also Fed. R. Bankr. P. 4005. The Plaintiff must prove each element of section 523(a)(2)(A) and "Plaintiff must prove those elements with 'more convincing force' than the evidence adduced by the [Debtor]." *Id*. (internal citations omitted).

The standard for fraud under D.C. law is substantively identical to the standard under the Bankruptcy Code, but D.C. law requires a higher standard of proof than the Bankruptcy Code. Here, the Court is satisfied that the negligent misrepresentation and fraud counts also established the necessary elements for non-dischargeability under section 523(a)(2) and did so at a higher

evidentiary standard than necessary— the clear and convincing standard.  Both standards require a fraudulent misrepresentation that induces another to act in justifiable reliance thereon, and harm resulting from such reliance.  Accordingly, the $52,800 award shall be non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code as it is a debt that was obtained by a fraud.

With respect to the disgorgement award, El Rafaei argues that based on Judge Teel's ruling in *Wilcox v. Carpenter (In re Carpenter)*, 453 B.R. 1, 10 Bankr. D.D.C. 2011), Khalil could not have suffered injury because of El Rafaei's fraudulent statements regarding his home improvement licensure in D.C. proper because the licensing regime in D.C. is "not designed to assure that licensed contractors are competent to perform work [and] no showing is required that a contractor is competent in the field of home improvement work in order to perform a license." *Id*.  Therefore, according to El Rafaei, Khalil could not have suffered injury or economic loss because of this representation.  Khalil urges the Court to apply the "exception" described in *Wilcox* because she asserts that she suffered separate actual damages that would have otherwise been covered by insurance, which would have been in place for a licensed home improvement contractor.  *See Wilcox*, at 11 (creditor "would be entitled to a determination of non-dischargeability if she can show that she relied on Carpenter's representation that he was licensed because she had reason to believe that she would be better off, with respect to the harm she suffered, if Carpenter had been licensed.").  However, the Court declines to apply this exception for two reasons.  First, Khalil has only established actual damages with respect to her foregone rental income, which the Court has already ruled are non-dischargeable.  Second, the Court disagrees that *Wilcox* should control the instant dispute, particularly considering recent D.C. Court of Appeals precedent.

In *Wilcox*, Judge Teel ruled that a disgorgement award under the D.C. home improvement regulations is not non-dischargeable under section 523(a)(2) because, "the regulations at issue are

not designed to assure that [the contractor] was competent to perform the required work" and therefore "[plaintiff's] reliance on [contractor] being licensed cannot be said to be the proximate cause of her loss based on any assumption by her that [contractor's] representation that he was licensed meant that he was competent to do the work." *In re Carpenter*, 453 B.R. 1, 11 (Bankr. D.D.C. 2011).   Judge Teel's ruling was thoughtful and examined the regulation to determine whether it reasonably aimed to ensure contractor competence.   This Court however feels compelled to follow the D.C. Court of Appeals with respect to interpretation of the purpose of one of the District's regulations.   The D.C. Court of Appeals has recognized "that the District's requirement that a general contractor be licensed is not 'designed solely to raise revenue,' but instead serves the regulatory function of ensuring that general contractors are qualified to take on that role. (internal citation omitted)."   *C.A. Harrison Companies LLC v. Evans*, 266 A.3d 979, 985 (D.C. 2022); *Id.* at 983 ("Licensure provides 'simple and sufficient proof' of the contractor's qualifications to perform the work of a general contractor...'[A]nything but an unyielding rule would put temptation in the way of unqualified (and unscrupulous) contractors and invite recurrence of the same abuses that underlay enactment of the regulatory scheme.'").

This Court finds that under the circumstances of this case, Khalil has established by a preponderance of the evidence that the disgorgement award should be excepted from El Rafaei's discharge as it was obtained via fraud as contemplated in section 523(a)(2) of the Bankruptcy Code.   Here, Khalil was concerned about licensure because it meant, among other things, that the contractor at issue would be qualified (i.e., competent) to do the renovation work.   As noted above, Khalil explained at trial that she specifically asked El Rafaei about licensure because she wanted to ensure the existence of competency, insurance, and bonding.   Day 3 Tr., pp. 7:1-10, 11:25-12:5, 84:21-85:4, 108:20-109:14**.**   She testified he told her he was a licensed contractor in the District.

She stated she relied on that statement because she thought El Rafaei was someone she could trust as he was the cousin of a good friend, and the good friend recommended him. Day 3 Tr., pp. 16-17. For his part, El Rafaei testified that he told Khalil he was not a licensed contractor even though he referred to himself as "the best general contractor/designer in [DC]." in a text message to her on October 11, 2019. Docket No. 28-19. As addressed above, this Court has noted several inconsistencies in El Rafaei's testimony and has no faith in his credibility. Instead, the Court found Khalil's testimony persuasive and credible and finds that in reliance on El Rafaei's misrepresentation, she paid him $120,000 in connection with the home improvement agreement. Accordingly, the Court finds that Khalil has proven by a preponderance of the evidence that the $120,000 disgorgement award is a debt obtained by fraud under section 523(a)(2)(A) and will therefore be excepted from El Rafaei's discharge.

While Khalil has argued that the debts at issue in this case should also be non-dischargeable under section 523(a)(6) as debts obtained by "willful and malicious injury," because the Court has already ruled that the entirety of the award against El Rafaei is non-dischargeable under section 523(a)(2), the Court need not analyze that issue and will dismiss that count as moot.

While the Court has not yet considered the amount of the attorney fees that will be awarded in this case, those fees will also be non-dischargeable as they follow the nature of the debt to which they correspond.

### Conclusion

Based on the foregoing, the Court will enter judgment for Khalil on Counts Two, Four, Five and Six and on the section 523(a)(2) count of the Section 523 Complaint. The Judgment shall be entered against both Defendants, jointly and severally. For the reasons stated above, the Court will dismiss Counts One, Three, Seven, Eight and Nine as to all Defendants. The total award to

Khalil will be $172,800 plus attorney fees.    Further, under D.C. Code § 28-3302(a), Khalil is entitled to pre-judgment interest at the rate of 6% on the disgorgement award of $120,000 and on the un-trebled amount of her actual damages of $17,600.  Post judgment interest shall apply at the normal applicable federal rate.

A separate Order will issue.

Date: Jul 22 2022

/s/ Klinette H Kindred

Klinette H. Kindred
United States Bankruptcy Judge

Electronic copies to:

Entered On Docket: July 22, 2022

Charles B. Peoples
James P. Campbell
Christopher L. Rogan
Warren R. Stein